**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

In re:

HEALTHMYNE, INC.,

Debtor.

Case No. 22-10780-cjf
Chapter 11 Proceedings

Hon. Catherine J. Furay

---

**DEBTOR'S EMERGENCY, EXPEDITED MOTION FOR AN ORDER:
(A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B)
AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER
AND GRANT CERTAIN INDUCEMENTS AS PART OF A STALKING HORSE
AGREEMENT, (C) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, (D) APPROVING THE FORM AND MANNER OF RELATED NOTICES,
(E) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (F)
GRANTING OTHER RELATED RELIEF**

---

The debtor-in-possession, HealthMyne, Inc. (the "Debtor") hereby moves (the "**Motion**")[1] the Court for entry of an order (the "**Bidding Procedures Order**"), (i) approving the proposed auction and bidding procedures (the "**Bidding Procedures**," attached to the Bidding Procedures Order as <u>Exhibit A</u>), for the potential sale (the "**Sale**") of substantially all of the assets (the "**Assets**") of the Debtor in this case (the "**Case**"); (ii) approving the Debtor's ability to solicit and enter into an agreement (the "**Stalking Horse Agreement**") with a stalking horse bidder (the "**Stalking Horse Bidder**"), with certain inducements (the "**Stalking Horse Inducements**") in connection therewith; (iii)

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures and the Bidding Procedures Order.

scheduling an auction for the Assets (the **"Auction"**) (if necessary) and a final hearing for approval of the Sale of the Assets (the **"Sale Hearing"**); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction (if any) and the Sale Hearing (the "**Sale Notice**," attached to the Bidding Procedures Order as **Exhibit B**); (v) establishing procedures for the assumption and assignment of executory contracts and leases, including notice of proposed cure amounts (the **"Assumption and Assignment Procedures**," notice of which is attached to the Bidding Procedures Order as **Exhibit C**); and (vi) granting other related relief. In support of the Motion, the Debtor states as follows:

### Jurisdiction & Venue

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

2. Venue of this proceeding is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding under 28 U.S.C. § 157(b)(1). It concerns the administration of the Debtor's estate pursuant to 28 U.S.C. §157(b)(2)(A).

4. The statutory predicates for relief include sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

### Background

5. The Debtor relies upon and incorporates herein by reference the Declaration of Rose Higgins (the Chief Executive Officer and Authorized Person) in Support of the Debtor's First-Day Motions ("**Higgins Declaration**").

6. HealthMyne is an innovative leader in radiomics, primarily serving the

oncology market. The Debtor has developed technology-enabled software solutions with the use of artificial intelligence, which can convert imaging data into useful tools to treat complex diseases like cancer.

7. The Debtor anticipates significant revenue growth over the next 3-5 years within the $250 billion global oncology market. Radiomics plays a critical role in personalized oncology care and therapy development and is essential to meet the growing needs of the market.

8. The Debtor believes that its products and services have significant upside potential and would be a valuable asset for a prospective purchaser. The Debtor further believes that conducting a sale of the business through a bankruptcy auction is the best way to maximize value for the benefit of stakeholders.

9. In connection with the Debtor's chapter 11 filing, among other things, an investor-led group of lenders (together, the "**DIP Lender**") provided (and further plans to provide on a post-petition basis) limited financial support in the form of a subordinate secured loan to the Debtor, which will enable the Debtor to run a sale process pursuant to the Bidding Procedures.

### Marketing Efforts

10. HealthMyne has been marketed for sale since November of 2021 through Convergence Healthcare Advisors LLC ("**Convergence**"). Convergence solicited marketing materials to over 100 targeted companies. In response, over 30 parties executed non-disclosure agreements, and over a half-dozen prospects remain in active conversation with Convergence regarding a sale transaction as of the Petition Date.

11.     The Debtor renegotiated its contract with Convergence and through a separate motion, will seek to employ Convergence as its investment banker during these proceedings in an effort to streamline the sale process.

12.     Upon approval of the Bidding Procedures, Convergence will immediately notify its targeted buyer group and approach all potential interested parties with details on the Bidding Procedures.  Convergence and the Debtor will work with all interested parties to provide necessary diligence and requested materials to potential purchasers.

## The Bidding Procedures

13.     The Debtor seeks approval of the Bidding Procedures attached to the Bidding Procedures Order as **Exhibit A**.  A full recitation of the details are not included in this Motion, but a summary of the key dates and deadlines proposed are:

| Event | Date |
|---|---|
| Deadline to serve Bidding Procedures and Sale Notice | Within 2 business days following entry of the Bidding Procedures Order |
| Deadline to serve Notice of Assumption and Assignment | Within 5 business days following entry of the Bidding Procedures Order |
| Deadline for Debtor to Designate any Stalking Horse Bidder | June [10], 2022 |
| Bid Deadline | June [17], 2022 |
| Assignment Objection Deadline[2] | June [17], 2022 |
| Deadline for Debtor to Designate Qualified Bids and Opening Bid | June [20], 2022 |
| Auction (If Necessary) | June [22], 2022, at 10:00 a.m. CST |
| Deadline to File and Serve Notice of Successful Bidder | June [22], 2022 or upon conclusion of the Auction |
| Sale Objection Deadline | June [23], 2022 at 5:00 p.m. CST |
| Sale Hearing | June [24], 2022, at [__:_0 _.m.] CST |
| Sale Closing | July 1, 2022 |

---

[2] The Cure Cost/Assignment Objection Deadline applies to all objections to the assumption and assignment of the Assigned Contracts, with the exception of objections related to adequate assurance of future performance by a Successful Bidder, which are due 7 days after the Sale Hearing.

4

14. The marketing process and proposed timeline under the Bidding Procedures provide sufficient time for the Debtor to market its Assets for sale, negotiate a stalking horse agreement (if any), evaluate all bids, hold an auction, and consummate a Sale; importantly, doing so within the proposed timeline aligns with the expectations of the DIP Lender and the cash needs and resources of the Debtor.

15. In the Debtor's judgment, with the consultation of Convergence, the proposed timeline provides sufficient opportunity for potential buyers to consider and formulate bids; indeed, many of the most likely bidders were participants in the Debtor's pre-petition marketing efforts and many have already conducted meaningful due diligence. Therefore, the Debtor submits that the Bidding Procedures will establish whether and to what extent a market exists for the Debtor's Assets.

16. In the event that the Bidding Procedures results in the selection of a Successful Bidder, the Debtor will seek entry of the Sale Order at the Sale Hearing.

### The Sale Notice

17. As part of the approval of the Bid Procedures, the Debtor seeks approval of the form of a Sale Notice, attached as **Exhibit B** to the Bidding Procedures Order.

18. The Debtor proposes to mail the Bidding Procedures Order, together with the finalized Sale Notice and Bidding Procedures, via first class U.S. Mail to all parties listed on the creditor matrix in this Case, as well as all parties on the targeted marketing list formulated by Convergence.

### The Proposed Stalking Horse Inducements

19. The Debtor requests approval, in its reasonable business judgment, to enter into a Stalking Horse Agreement, and offer certain "**Stalking Horse Inducements**" to a suitable Stalking Horse Bidder as follows:

(a) A *maximum* break-up fee of 3% of the total cash consideration;

(b) Reasonable and actual out of pocket costs, expenses, and fees up to a *maximum* of 2% of the total cash consideration; and

(c) Any reasonable non-financial incentives (e.g. due diligence, modified timelines, modified bidding procedures that are not otherwise inconsistent with the Bidding Procedures Order) that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order.

20. Pursuant to Bankruptcy Code sections 105, 363, 503, and 507, the Debtor would be authorized, but not required, to offer the Stalking Horse Inducements in its reasonable business judgment.

21. To foster competitive bidding, the Debtor believes that having the ability to offer the Stalking Horse Inducements may serve to ignite renewed interest in the Debtor, which will maximize potential value of the estate for the benefit of all creditors.

22. The Debtor further requests that any amount that becomes due and payable as a Stalking Horse Inducement be deemed an administrative expense of the estate pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

### The Auction

23. The Debtor submits that the process and requirements associated with submitting a Qualified Bid are fair, reasonable, appropriate, and designed to maximize

value of the Debtor's estate, creditors and other parties in interest.

24. The Debtor may, in its business judgment, (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and otherwise best Bid and which is the next highest and otherwise best Bid; (iv) reject any Bid that is, inadequate, insufficient, not in conformity with the requirements of the Bidding Procedures, or not in the best interests of the Debtor and its estate; (v) impose any additional, reasonable terms and conditions with respect to all Potential Bidders; (vi) make non-material modifications to the Bidding Procedures; and (vii) implement additional procedural rules with respect to the conduct of the Auction that the Debtor determines.

25. If no Qualified Bid other than a Stalking Horse Bid is received by the Bid Deadline, no auction would be held and the Stalking Horse Agreement shall be the Successful Bid.

26. As soon as possible after the conclusion of the Auction (or, if no Qualified Bid other than a Stalking Horse Bid is timely received, as soon as reasonably practicable after the Bid Deadline), the Debtor shall file a notice identifying any Successful Bidder and, if applicable, any Back-Up Bidder.

<strong><u>Assumption and Assignment Procedures</u></strong>

27. The Debtor also seeks approval of the Assumption and Assignment Procedures and accompanying Assumption and Assignment Notice attached to the Bidding Procedures Order as **Exhibit C**.

28. The Assumption and Assignment Notice will be provided to all known

counterparties to contracts that may be assumed by the Debtor as part of any Sale, together with any cure amounts, and informing such counterparties of their right to object.

29. The Debtor submits that the Assignment and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all counterparties to any Assigned Contract and should be approved.

### Legal Basis for Relief

30. Section 363(b) of the Bankruptcy Code provides, in relevant part: "The [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This Court's power under § 363 of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* § 105(a). *See also* Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction").

31. The overriding goal of a sale under § 363 is to maximize the value of the debtor's estate. *In re Capra*, 614 B.R. 291, 297 (Bankr. N.D. Ill. 2020); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997). To achieve that goal, a debtor has "broad discretion to determine the appropriate procedures for marketing and selling" its assets. *In re 160 Royal Palm, LLC*, 600 B.R. 119, 127 (S.D. Fla. 2019).

32. Accordingly, courts routinely approve bidding procedures with stalking horse bidders designed to foster competitive bidding and maximize value. *See, e.g., In re*

*ATVT LLC*, 2021 Bankr. LEXIS 582 (Bankr. W.D. Wis. March 12, 2021); *In re Grede Foundries, Inc.*, 2009 Bankr. LEXIS 5314 (Bankr. W.D. Wis. Sept. 30, 2009); *In re Integrated Res., Inc.* 147 B.R. 650, 659 (S.D.N.Y. 1992).

33. A sale under § 363 should be approved when it is justified by a sound business purpose. *Westmoreland County Emp. Retirement Sys. V. Parkinson*, 727 F.3d 719, 725 (7th Cir. 2013); *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d. Cir. 1983); *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 668 (E.D. Mich. 2012); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008). The burden of establishing a rational business justification lies with the debtor. *Nicole Energy*, 385 B.R. at 230 (citing *Lionel*, 722 F.2d at 1070-71). However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. *See, e.g., In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007).

34. The Debtor submits that the proposed Stalking Horse Inducements are also in the best interests of the estate. The use of a stalking horse in an auction process is a customary practice in chapter 11 cases and serves to maximize value by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Off. Comm. Of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, at *1 (E.D. Wis. July 7, 2011); *see also Wintz v. Stan Koch & Sons Trucking, Inc. (In re Wintz Companies)*, 230 B.R. 840, 846 (B.A.P. 8th Cir. 1999) (courts permit break-up fees or termination fees "provided these fees create an incentive for increased bidding"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr S.D.N.Y. 1989).

35. The Stalking Horse Inducements are within the range of what is generally acceptable for bid protections in stalking horse scenarios, and therefore should be approved by the Court. *See e.g., In re Alex & Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. July 16, 2021) (pre-approving a 3% break-up fee plus a $250,000 expense reimbursement); *In re The McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. Way 11, 20220) (pre-approving a 3% break-up fee); *In re PES Holdings, LLC,* No. 19-11626 (KG) (Bankr. Del. Nov. 14, 2019) (same).

36. Here, the proposed Sale of the Debtor's Assets pursuant to the Bidding Procedures is in the sound business judgment of the Debtor and is being proposed in good faith. The proposed Bidding Procedures seek to accomplish a controlled, fair, and open bidding process. Additionally, the proposed Stalking Horse Inducements are fair, reasonable, and reasonably relate to the "risk, effort, and expenses of [a] prospective purchaser." *Integrated Res.*, 147 B.R. at 662.

37. The Debtor believes that the Bidding Procedures and pre-approval of the Stalking Horse Inducements are essential for the Debtor to maximize value, and therefore are in the best interests of the estate. An expeditious sale of the Assets will minimize administrative expenses of the Case, preserve business operations and customer relationships, and maximize value of the Assets on a going-concern basis.

38. Additionally, the Sale Notice procedures and Assumption and Assignment Procedures constitute good and adequate notice of the Sale and all related materials and procedures related thereto in compliance with Bankruptcy Rule 2002.

39. The Debtor seeks authority to sell the Assets free and clear of any interest,

pursuant to section 363(f) of the Bankruptcy Code.

40. Section 363(f) of the Bankruptcy Code provides for a sale "free and clear" of an entity's interest in property of the estate "only if":

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in *bona fide* dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

41. Section 363(f) of the Bankruptcy Code is stated in the disjunctive; therefore, it is only necessary to meet one of the conditions of section 363(f) in a sale under section 363(b) of the Bankruptcy Code. The Debtor submits that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to any Sale.

42. The Debtor anticipates that any Sale will satisfy section 363 of the Bankruptcy Code by virtue of Silicon Valley Bank's consent to the Sale.

43. The Debtor will send the Sale Notice to, among others, all parties who assert liens or claims against the Assets. Any holder of a claim against or interest in the Assets who does not object to the Sale will be deemed to have consented to the Sale of the Assets free and clear of its claim or interest. *See* 11 U.S.C. § 363(f)(2). Moreover, the Debtor believes that any parties that do object on the basis that they hold liens or claims against the Assets will either (a) be holders of liens or claims that are subject to a *bona fide* dispute or (b) would be compelled to accept cash in satisfaction of their interests. 11 U.S.C. §§ 363(f)(3) & 363(f)(5).

44. The Debtor also submits that it is appropriate to sell the Assets free and clear of successor liability relating to the Debtor's business. Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtor.

45. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m).

46. The Debtor's marketing efforts and negotiations with interested parties has been and will continue to be undertaken at arm's-length and without collusion, with all parties being represented or at least having the opportunity to be represented by their own counsel. Accordingly, the Debtor requests, and will demonstrate at the Sale Hearing, that any Successful Bidder for the Assets should be deemed a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code.

47. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Upon finding that a debtor has exercised its sound business judgment in determining to assume an executory contract, courts will approve the assumption under § 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996).

48. In connection with a Sale, the Debtor will assume and assign any Assigned Contracts, contingent upon payment of any Cure Costs and effective only upon Closing pursuant to § 365(b)(1).

49. Further, under § 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").

50. At the Sale Hearing, to the extent necessary, the Debtor will be prepared to proffer testimony or present evidence to demonstrate the ability of the Successful Bidder to perform under any Assigned Contracts. The Sale Hearing, therefore, will provide the Court and other interested parties with the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance, as required by section 365(b)(1)(C) of the Bankruptcy Code. Accordingly, it is requested that at the conclusion of the Sale Hearing, the proposed assumption and assignment of the Assigned Contracts be approved.

51. Lastly, Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). The Debtor requests that each of the Bidding Procedures Order and the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

52. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before an order can be implemented. *See* Fed R. Bankr. P. 6004(d) advisory committee's note. The stay pursuant to Bankruptcy Rule 6004(h) may be waived to allow a sale to close immediately "where there has been no objection to the procedure." *See* 10 Collier on Bankruptcy ¶ 6004.11 (16th ed. 2016). Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Bidding Procedures Order granting the relief requested herein, and order such other further relief as the Court deems necessary and appropriate under the circumstances.

Dated: May 16, 2022.

**MICHAEL BEST & FRIEDRICH LLP**

*/s/ Justin M. Mertz*
Justin M. Mertz
Michael Best & Friedrich LLP
100 E. Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202-4108
Phone: 414.271.6560
Fax: 414.277.0656
jmmertz@michaelbest.com

*Proposed Counsel for the Debtor*